WILLIS V. DALTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dalton v. Commissioner
Docket No. 6635-70.
United States Tax Court
T.C. Memo 1973-160; 1973 Tax Ct. Memo LEXIS 131; 32 T.C.M. (CCH) 782; T.C.M. (RIA) 73160; July 23, 1973, Filed *131 Held: Petitioner had no present intent to make a gift when he mailed a letter to the Association allegedly giving it a four-fifths undivided interest in unimproved real estate and petitioner is not entitled to any charitable contribution deduction therefor. Donald L. Powars, for the petitioner. Robert E. Casey, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency of $8,361.18 in the income tax of petitioner for 1967. We are to decide whether petitioner made a completed gift to charity of an undivided four-fifths interest in unimproved real estate and, if so, to determine the amount of the charitable contribution deduction to which petitioner is entitled for 2 such gift. FINDINGS OF FACT Petitioner is a medical doctor who at all *132 relevant times resided in Compton, Calif. For 1967 petitioner filed his income tax return with the district director of internal revenue, Los Angeles, Calif.
During 1967 petitioner owned a parcel of real property situated in the city of Compton, Calif., that is commonly described as lot 53 in tract number 1473. This lot borders along the south side of Alondra Boulevard and measures 125 feet in width, as measured along Alondra Boulevard, and 197.69 feet long, as measured at right angles to said boulevard. The approximate total square footage of the lot is 24,711 square feet. Lot 53 is divided into two sections. The westerly 50-foot portion, as measured along Alondra Boulevard, was, in 1967 and at the time of trial, vacant, unimproved realty. The approximate square footage of the westerly portion of the lot is 9,864 square feet. This is equal to approximately 40 percent of the total square footage of the entire lot. The easterly 75-foot section of lot 53, also as measured along Alondra Boulevard, comprises approximately 14,847 square feet - or 60 percent of the entire square footage of the lot. On this easterly section of the lot petitioner maintained a residence and medical *133 office. 3 Petitioner alleges that on December 31, 1967, he made a gift of an undivided four-fifths interest in the westerly 50 feet of lot 53 - the vacant, unimproved realty - to the Grace Evangelistic Association. (This westerly portion of lot 53 is hereinafter referred to as the subject property.) In the early evening of December 31, 1967, petitioner made a phone call to the Grace Evangelistic Association (Association) in order to inform it of his desire to make a contribution of property. At the time of his call a New Year's Eve party was in progress at the Association. The record does not indicate the person to whom petitioner spoke or the substance of the conversation. After making this call, petitioner typed out the following letter dated December 31, 1967, and addressed to the Association: To Whom It May Concern: I hereby give to the GRACE EVALGELISTIC ASSOCIATION an undivided 4/5 th interest in the real property described in Los Angeles County Tax rolls as: Code area 2800, Map Book 0575, Page 020 - Parcel 002 and further described as Trace #1473 that Part W of A line parallel with and Dist W at R/A 75 ft. from E line of lot 53. with the following provisions: *134 1. That Dr. Willis V. Dalton will have first option to buy described lot at the appraised market value within three years (Dec. 31, 1970). 2. That Dr. Willis V. Dalton will have the right to use and control it for parking without 4 charge until such time as it is sold. He may also add improvements. 3. That the proceeds of the sale will be distributed as follows (if this much is available or in a similar percentage if not this much available.): a. Grace Evangelistic Association
$3000.00
b. Voice of Calvary (Jack MacArthur)
6600.00
c. Immanuel Baptist Church, Compton
1200.00
d. Child Evangelism (Compton area)
1000.00
e. Christian Medical Assn.
3000.00
f. Air Mail for God
1000.00
g. Christians in Action Net balance of sale remaining after above is paid.
Signed: Willis Vernold Dalton After typing the letter petitioner went to the office of Mary Louise Heath, notary public, who agreed to notarize petitioner's signature even though it was past her regular business hours. After obtaining the notarization petitioner placed regular postage on the letter and placed it in a mail box. Petitioner did not orally or in writing notify any of the *135 organizations listed in the third paragraph of his letter other than the Association of his intended gifts, but he thought he asked the Association's secretary to do so. He did not know whether she ever did this. On January 4, 1968, the Association sent petitioner a letter indicating its receipt of his letter and stating: We will place this paper in our files until such time as you advise us further concerning liquidation of the property. * * * During 1967 and continuing to the date of trial all of lot 53, including the unimproved portion which was the 5 subject of the letter, was encumbered by a deed of trust to secure a promissory note that petitioner owed to the Capital National Bank. The bank was the beneficiary of the deed of trust, which was recorded. As of December 31, 1967, petitioner owed the bank $20,447.17. Petitioner has never formally notified the bank of his alleged gift to the Association although he thought he mentioned it at some time to the bank manager. The deed of trust covering lot 53 forbids petitioner from conveying any part of the property without the consent of the bank and provides that in the event of an unauthorized conveyance the entire *136 balance would become due at the bank's option. Petitioner continued to make payments on the promissory note secured by lot 53 and to pay all taxes due with respect to the property after December 31, 1967. He deducted the taxes as a contribution. At the time of sending the letter petitioner did not anticipate that the Association would sell the property on its own initiative, and petitioner expected that the property would only be sold if he found a purchaser for it. The property remained unsold until the time of trial. OPINION To obtain a deduction in 1967 under section 170 [1] for a charitable contribution petitioner must show that he made the 6 gift to charity in that year. The essential elements of such a gift are donative intent, effective delivery, and acceptance. Although the parties have made arguments concerning all three elements, we believe the issue can be resolved in respondent's favor solely by looking to petitioner's intent. The only objective evidence of donative intent on petitioner's part is his use of the word "give" in the first paragraph of the letter sent *137 to the Association. The remainder of the letter is somewhat ambiguous with respect to petitioner's then present intent to make a gift because petitioner retained the right to use the land for parking until it was sold and the right to direct the disposition of any proceeds from the sale of the land. These conditions are more consistent with an intent to make a gift of future sale proceeds than with an intent to make a present gift. Petitioner's statement at one point in the trial (which he later recanted and attempted to correct) that he did not expect the Association to sell the land unless he found a purchaser for it also indicates that he was merely pledging the future sale proceeds. In addition, we note that petitioner could not have intended to confer any real present benefit upon the Association because the land was unimproved, unproductive of income, and restricted to a rent-free use by him until sold. 7 Petitioner did none of the things that a person with donative intent might be expected to do. First, petitioner did not discuss the possibility of a gift with the recipient except at the very last instant while a New Year's Eve party was in progress. Petitioner has *138 not presented any evidence indicating that the Association believed that it was receiving a present gift; and we must assume that such favorable evidence does not exist. . Second, petitioner did not attempt to have the Capital National Bank remove its encumbrance upon the portion of land allegedly given to the Association. Third, after making the alleged gift petitioner continued to act as the owner of the entire property by using the land for his parking lot and by making tax and mortgage payments with respect to the entire property. Last, outside of the letter to the Association, to our knowledge petitioner did not disclose to anyone except respondent the existence of the gift. Save for petitioner's use of the word "give" in his letter to the Association, there is no substance to petitioner's purported gift. We do not think that the use of a single word can establish petitioner's donative intent or that it should be given any effect here for Federal income tax purposes. . In view of the foregoing we hold that petitioner had no present intent in 1967 to make a gift *139 of an interest in his 8 property to the Association and that he is not entitled to a charitable contribution deduction for such alleged gift. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended. ↩